## Zelesnick v. Spring Township School District.

*N. B. Spangler* and *Ivan Walker*, for plaintiff.

*John G. Love, Ellis L. Orvis, W. D. Zerby, A. C. Dale* and *John Blanchard*, for defendant district.

FLEMING, P. J., Jan. 8, 1929.—The plaintiff has filed exceptions, twenty-five in number, to the decree *nisi* entered in this case.

Exceptions 1 and 2 are wholly without merit, in that plaintiff complains that we did not find certain findings of fact, whereas we found in the exact words set forth in such exceptions.

Exceptions 3 to 16, inclusive, complain that we did not, in this case, reiterate *verbatim* certain findings of fact found by us in Beaver et al. *v.* these same defendants, to No. 1, September Term, 1926, in equity, and which we have incorporated, by reference, in the opinion filed in support of our decree *nisi* herein.

Exception 17 complains of our finding that there was no abuse of sound discretion by the defendants in selecting the land of the plaintiff for condemnation, and raises the question that such is a conclusion of law and not a finding of fact.

Exception 18 complains that the resolution adopted by the defendants on Sept. 8, 1926, set forth that the land of the plaintiff was intended for a proposed "new school site," which, plaintiff contends further in said exception, was, under all the evidence, the site intended to be used by the defendants in the erection of a school building from a proposed loan, which has been declared invalid in Beaver et al. *v.* these same defendants, and mentioned above.

Exception 19 complains of our failure to find that defendants, between Aug. 2, 1926, and Sept. 8, 1926, removed valuable timber from plaintiff's land sought to be condemned, and also that defendants partially destroyed plaintiff's crop.

Exception 20 complains of our failure to find as a fact that, by agreement of counsel of record, this case and that of Beaver et al. *v.* these same defend-

ants, mentioned above, were tried by agreement together with the understanding that the evidence, so far as admissibility, was to apply in both cases.

Exception 21 complains that we have entirely ignored the 2nd, 3rd, 4th and 5th paragraphs of the prayer of the plaintiff's bill.

Exception 22 raises the question as to the retroactive effect of the Act of May 11, 1927, P. L. 965, and assigns eight alleged reasons why such act cannot be retroactively applied in the present case.

Exception 23 complains that the decree as framed vests title in fee simple in the defendant school district.

Exceptions 24 and 25 complain of the imposition of the costs upon the plaintiff.

Let it be kept clearly in mind, in our consideration of these exceptions, that no requests for findings of fact or for conclusions of law were made by either of the parties to this case.

We shall first consider exception 22, for if such is to be sustained, consideration of the further exceptions will be to no purpose. Let us note the reasons given in support of this exception, as follows, to wit:

"Because the said court held as a matter of law that the Act of Assembly of May 11, 1927, P. L. 965, validated the resolution of the defendant school board, passed the 2nd day of August, 1926, for the following reasons:

"*(a)* Because said resolution did not divest the title of the plaintiff to the land described therein under the right of eminent domain.

"*(b)* Because, while retroactive acts of the legislature are permissible under certain facts, the act above referred to contains no language which would be sufficient to divest the title of plaintiff's land and place it in the defendant school district.

"*(c)* Because the legislature cannot by an arbitrary edict take the property of the plaintiff and give it to the defendant, because the legislature is powerless to infuse life into a resolution such as adopted by defendants on Aug. 2, 1926, which was absolutely null and void.

"*(d)* Because the action in this case was brought on the 1st day of September, 1926, and said act of assembly was not passed until the 11th day of May, 1927, and could not in any manner affect the pending proceeding.

"*(e)* Because said curative Act of 1927, as applied to the defendants' resolution, is a violation of the Constitution of Pennsylvania in attempting to take from the plaintiff her property without due process of law.

"*(f)* Because said act of assembly could not in any manner apply to the pending proceeding.

"*(g)* Because the resolution of the defendant school board, passed the 8th day of September, 1926, has no reference of any kind whatever to the instant case and does not show that it was passed as a substitute for the resolution of Aug. 2, 1926, and, so far as the present proceeding is concerned, it is null and void.

"*(h)* Because the resolution of the defendant school board, passed Sept. 8, 1926, sets forth that the plaintiff's land is necessary for the proposed new school site in the School District of Spring Township. The evidence in the case shows that the new school-house, then contracted for and in connection with which the plaintiff's land was to be used, was never built, and that the loan contemplated by the defendant school district to raise funds for said purpose was invalid."

The defendant school district, on Aug. 2, 1926, passed a resolution, the content and purport of which was the exercise of the right of eminent domain

vested in such school district by section 605 of the School Code. That such resolution was "passed" in the common and accepted sense of the word, that is to say, by a majority of the members voting, has not been denied. Nor has it been denied that all the members of the board were actually present and voting. Indeed, the minutes of the defendant school district plainly disclose this to be the fact. We are fully, therefore, entitled to conclude that three of the five members, at least, voted in the affirmative, and that the resolution was passed by a majority of all of the members of the board, as is required by sections 605, 608 and 609 of the School Code. No evidence has been adduced to controvert this fact. That the secretary of the defendant school district failed to record the vote, as stipulated in section 403 of the School Code, is not denied.

On May 11, 1927 (P. L. 965), an act of assembly was approved by the Governor of the Commonwealth, the title to which is as follows:

"An act validating actions of boards of school directors in certain cases where there was a failure to record the vote of members of the board." The sole section of the act is as follows:

"Section 1. Be it enacted, etc., That whenever heretofore the school directors of any school district shall have taken any action, performed any duty or exercised any power which by law required the affirmative vote of a majority or greater proportion of all the members of the board of school directors, and which by law was required to be recorded so as to show how each member of the board voted thereon—if such action or vote was actually taken, or duty performed, or power exercised by the board as required by law, the same shall be deemed and is hereby made valid and legal to all intents and purposes, notwithstanding the fact that the secretary of the school board, or the board, did not actually record on the minutes of the board the vote showing how each member voted, as required by law."

The presence of the word "heretofore" in the first line of this act indicates that it was the intent of the legislature, so far as in its power lay, to have the act cover all cases specifically mentioned therein which had occurred prior to the time of its passage. In our instant case there is no denial that the action was actually taken or the power of condemning the plaintiff's land actually exercised. Thus far there is no doubt. It is, therefore, for us to consider the power of the legislative body to enact such legislation.

The great weight of authority supports the rule that when an enactment prejudicially affects vested rights, or the legal character of the past transaction, such enactment must be considered prospective and not retroactive: Bedford v. Shilling, 4 S. & R. 401. We find the further rule that such acts are, in a *prima facie* sense, prospective, and that rights are not to be affected or interfered with unless there are express words to that effect: Lefever v. Witmer, 10 Pa. 505. Let us consider, therefore, the following questions: (1) Is the plaintiff possessed of a vested right in the instant case? (2) If so, has such vested right been prejudicially affected by the act in question? (3) Has the legal character of a past transaction been affected in a manner prejudicial to the plaintiff? And (4) is the wording of the act sufficiently expressive to give a retroactive interpretation to such enactment? We must answer this last question in the affirmative for the reasons advanced in the preceding paragraph.

The learned counsel for the plaintiff has cited us a number of cases in support of plaintiff's contentions, none of which appear to be parallel in any controlling degree, to the case at bar and all of which are clearly distinguishable therefrom.

The case of Waynesburg Borough v. Ray, 59 Pa. Superior Ct. 640, is a case wherein it was sought to collect on a municipal improvement which had been completed on Sept. 18, 1903, at a time when the Act of April 23, 1889, § 3, P. L. 44, was in force. The borough had not been diligent in pursuing the rights accorded it under such act and had allowed such rights to lapse, but sought, through the means of the alleged curative Act of April 15, 1907, P. L. 83, to file a lien, the right for which had been permitted to lapse as aforesaid. The Superior Court, in denying such right to the borough, said: "The land was discharged from the claim, not by any reason of defect in the law or of any slip or irregularity in the proceedings, but because the borough saw fit not to take advantage of the adequate statutory provision for perpetuating it. The borough's action was as effectual to discharge the land as if it had formally released the land from the charge." No such laches is charged in the instant case and the basis of plaintiff's contentions is the "slip or irregularity in the proceedings" which the Superior Court so plainly excepts in the case cited.

In Lewis v. Pennsylvania R. R. Co., 220 Pa. 317, cited by the plaintiff, it appears that the Act of April 4, 1868, P. L. 58, declared that a person not in the employment of a railroad company, but using its facilities under a contract between the railroad company and his employer, which simply permitted his carriage for and in connection with the business of his employer, conducted upon the railroad, was not a passenger thereon, but a fellow-servant of the trainmen, and, if killed through negligence, his widow could not recover. Plaintiff's husband had been killed under such circumstances before the repeal of the cited act by the passage of the Act of June 10, 1907, P. L. 522, and the court therein held that the repealing act did not affect a cause of action which had accrued prior thereto, saying: "A legal exemption from a demand by another is a vested right which the legislature may not interfere with." In the instant case, the plaintiff is not asserting, nor can she assert, a legal exemption as to the condemning of her lands for school purposes, nor are the defendants seeking more than that which is accorded them by the School Code, to wit, the right to acquire land for school purposes.

In Kay v. Pennsylvania R. R. Co., 65 Pa. 269, cited by the plaintiff, the injury upon which the suit was based occurred in 1864, at which time a right to recover full compensation rested in the plaintiff. Suit was begun in 1866. An act passed in 1868 limited recovery to $3000. A verdict was rendered for the plaintiff in the sum of $8000, which verdict was sustained, the court holding that the act limiting recovery was plainly an interference with an unquestioned vested right of recovery. In the instant case, the right of the plaintiff to recover full and adequate compensation for her land condemned by the defendant school district is in no manner affected by the Act of May 11, 1927, P. L. 965.

In Menges v. Dentler, 33 Pa. 495, cited by the plaintiff, to have held that the act there in question was retroactive would have deprived the owner, one who had acquired title to lands by unquestioned and regularly recorded conveyances, of his ownership and would have vested the same in another by the arbitrary validation of an otherwise imperfect sheriff's deed, leaving such recorded owner without redress or compensation of any kind. As we have shown above, the plaintiff in the instant case has a full and effectual right to recover adequate compensation for the land taken and is, by proper legislative enactment, given ample security for the payment of the same.

One of the marked distinguishing characteristics of the instant case is that it involves the right of the sovereign state to regulate the manner in which a

subdivision of such sovereign state shall exercise a previous right, the power to grant which is unquestioned. In none of the cited cases, or in none which we have been able to find, with the exception of one to which reference will later be made, do we find this distinguishing characteristic to exist. These defendants have been charged with the duty of establishing and maintaining proper schools for their particular district. The sovereign state, the Commonwealth of Pennsylvania, of which the defendant school district, together with all other school districts within its borders, is a most essential subdivision or part, in order to assist in the accomplishment of the purposes of such sovereign state, in forming and creating such subdivisions, and to properly avoid the thwarting of such purposes by the ignorance or unreasonableness of any private individual, has seen fit by the enactment of section 605 of the School Code to vest in such school districts, or subdivisions of the sovereign state, the right of eminent domain, such section providing as follows:

"Section 605. Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that said board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of and occupy such land as it may have selected for school purposes and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of the act."

It has been decided in Lewisburg School District v. Harrison et al., 290 Pa. 258, that the order for procedure for condemnation of land for school purposes, under section 605 of the School Code, is (1) the selection of the site for a school; (2) disagreement with owners as to price; (3) decision on amount of land and location; (4) entry, taking possession and occupancy, being one and the same act, concurrently performed by going on the land; (5) designating and marking the boundary lines, after which steps may be taken to use the land for school purposes. The plaintiff, in the instant case, does not deny, or attempt to deny, that the defendant school district has acted in accordance with this mode of procedure.

To these steps the legislature, by section 403 of the School Code, has added the formal requirement, in regard to the performance of this and other acts, that "the affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how such members voted," shall be required. This is but a direction as to procedure and cannot affect any right, vested or otherwise, accruing to the plaintiff or any individual land owner. The legislative body has the power to confer the right of eminent domain upon one of its most essential subdivisions, and it, in like manner, has the right to prescribe the manner in which it shall be exercised or to waive such requirements if deemed necessary. Endlich on the Interpretation of Statutes, § 285, page 387, says: "No person has a vested right in any course of procedure nor in the power of delaying justice or in deriving benefit from technical and formal matters of pleading. . . . If the time for pleading were shortened or new powers of amending were given, it would not be open to the parties to gainsay such a change; the only right thus interfered with being that of delaying or defeating justice; a right little worthy of respect."

The legislature has well provided by sections 606, 609, 610, 611, 612, 613 and 614 of the School Code for compensation, full and adequate, for damages suffered by the taking of plaintiff's land. The Act of May 11, 1927, P. L. 965, does not remove, hinder or abridge this right of recovery in any way. Were

we to sustain plaintiff's contention that the Act of May 11, 1927, P. L. 965, is not retroactive and does not, therefore, cure the defect in the procedure taken at the meeting of Aug. 2, 1926, by waiving the formal requirement that the manner in which the several members voted be recorded in the records thereof, and, thus finding, make perpetual the injunction obtained herein, the plaintiff would but again be subjected to a like proceeding, with a properly recorded vote, and her remedy would be but by compensation to be received under sections 606, 609, 610, 611, 612, 613 and 614 of the School Code. Her only advantage, if such can be so called, would be in delaying justice and in hindering the defendants from the exercise of their duties as important public servants and in imposing the costs upon the school district, to be paid by the taxpayers generally. This would be, indeed, an accomplishment "little worthy of respect." Again, this is a proceeding in equity and the established maxims of equity apply. Certainly, the plaintiff is not coming into equity with clean hands. Her further refusal to consider the suggestion of the solicitor for the defendants at the argument of these exceptions, whereby it was proposed that the defendant school district would pay the costs of this proceeding if the plaintiff would terminate further controversy and proceed with her right to recover compensation for her lands in the manner prescribed by the School Code, indicates conclusively, in the light of the certainty of the ultimate condemnation of her land, that the maxim providing that "he who seeks equity must do equity" has been transgressed herein.

Further, the requirement that a record be made showing how each member voted can have no other purpose than to perpetuate proof that the corporate act of the school district in condemning a particular piece of land was regularly and properly done by an affirmative vote of a majority of all the members of the school board, which fact is not denied in the instant case. In Journeay v. Gibson, 56 Pa. 57, 60, it is held that statutes retrospectively validating defective acknowledgments of deeds are sustainable because they operate, not upon the deed or contract, changing it, but upon the mode of proof. Such acts seem to have been quite uniformly sustained: Mercer v. Watson, 1 Watts, 330; Tate v. Stooltzfoos, 16 S. & R. 35. See, also, *dictum* in Menges v. Dentler, 33 Pa. 499. By analogous reasoning, the Act of May 11, 1927, P. L. 965, does not act upon the action of the board condemning plaintiff's land, changing it, but solely upon the mode of proving that the resolution of Aug. 2, 1926, was passed by a majority of all the members of the school board.

Counsel for the plaintiff further contends that Grim v. Weissenberg School District, 57 Pa. 433, is authority only upon the specific facts therein contained. We feel that, to the contrary, such case controls to a large measure the instant case. It is, in fact, the only case in point which we have found which includes the sovereign power of the State and rules accordingly. The analogy between such case and the instant case, supported by the stronger facts of the instant case, makes the words of Chief Justice Sharswood particularly applicable herein. In the cited case the plaintiff had paid, under protest, an additional tax levied under the provisions of the Act of March 25, 1864, § 7, P. L. 88. Such payment had been made by the plaintiff therein between Aug. 10, 1864, and Aug. 15, 1864, and on Aug. 20, 1864, he brought suit before a justice of the peace to recover back the amount paid beyond the first levy. On Aug. 25, 1864, an act of assembly was passed (P. L. 1027) reciting the assessment of March 28, 1864, being the assessment to which plaintiff objected, and stating that its validity was doubted and enacting "That the taxes imposed by the authorities of said Township of Weissenberg, in relation to the payment of bounties, are hereby legalized and made valid." On

351

Oct. 13, 1864, the justice of the peace gave judgment for plaintiff. The defendants appealed and it was held on appeal that if the legislature had antecedent power to authorize a tax, it could cure, by a retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which had been vested in an individual should be divested. In the cited case it was the sovereign power of the State, through its legislature, conferring upon a subdivision the right to levy, assess and collect from an individual a certain tax. In the instant case, it is again the sovereign State, through its legislature, extending its right of eminent domain to a subdivision and conferring upon the defendant school district the right to condemn, take and use the land of the plaintiff. In both the cited case and the instant case, the validity of the manner in which the subdivision of the sovereign State exercised the power conferred became in controversy. In the cited case, a right of action accrued to the plaintiff from a defect in exercising the power conferred. In the instant case, the bill of the plaintiff is based, at least in part, on a like cause. In the cited case, Chief Justice Sharswood said: "The power of taxation is a necessary and indispensable incident of government. It also has limits, but they are broadly marked and well defined." It cannot be denied that the power of eminent domain is another indispensable incident of government, especially when exercised for the advancement of education. Its limits are also broadly marked and well defined. Further, Chief Justice Sharswood says: "The taxation impeached in the case now before us was clearly within the limit thus prescribed. It was for a public purpose and to subserve an end eminently advantageous to the community upon which it was levied. It has not been pretended, and could not be, that the legislature had not the antecedent power to authorize it. If so, they could cure any irregularity or want of authority in levying it by a retroactive law, even though thereby a right of action which had been vested in an individual should be divested. It is within the principles of all the decisions of admitted authority. If the legislature can cure an irregularity in a judgment or other legal proceedings, or defective deeds, mortgages or other assurances, by retroactive laws, thereby destroying existing legal claims or defenses, or practically transferring legal vested titles, a fortiori, may they make valid the acts of public officers in the bona fide performance of public duties, such as that of levying and collecting taxes imposed for an admitted public good and whose justice and equality are not impugned." The act of the defendant school district on Aug. 2, 1926, was likewise for a public purpose and to subserve an end likewise eminently advantageous to the community in which the plaintiff resides. Nor could it be contended here, nor is it, that the legislature could not confer upon the defendant school district the right of condemning the plaintiff's land and of taking it for public use. Having the antecedent power to authorize such taking, the legislature can cure any defect or irregularity in exercising it by a retroactive law, even though the plaintiff's right of action be thereby divested.

The Act of May 11, 1927, P. L. 965, is, therefore, plainly retroactive, and the 22nd exception of the plaintiff must be dismissed.

We do not feel that the plaintiff seriously presses the sundry other exceptions filed, but it is our duty to dispose of them and we shall proceed to do so.

Exceptions 3 to 16, inclusive, complain, as we have stated above, that we did not again, in this case, reiterate verbatim certain findings of fact relative to the bond issue which was contemplated by the defendant school district at the time plaintiff's land was condemned by the resolution of Aug. 2, 1926, found by us, supra, to have been validated by the Act of May 11, 1927, P. L.

965. A careful reading of our opinion filed in support of our decree *nisi* in this case will show that such findings were embodied therein by reference to the action of Beaver et al. *v.* these same defendants, being an action to No. 1, September Term, 1926, in Equity. We know of no good purpose which would be served by repeating these findings *verbatim* in the instant case. The case of Beaver et al. *v.* these same defendants was to a number antecedent to the instant case and was considered under strict compliance with the Equity Rules. Such case involved the validity of the same identical bond issue complained of by the present plaintiff and our decree therein gave the identical relief sought by this plaintiff in the 2nd, 3rd, 4th and 5th paragraphs of the prayer of her bill. Such question having been properly adjudicated and no exceptions having been filed, plaintiff's counsel herein, also representing Beaver et al., plaintiffs, and the findings, conclusions and decree being embodied by reference herein, there is no need of again disposing of the matter here. Plaintiff contends that because the defendant school district was, at the time of the condemnation of her lands, endeavoring to increase its indebtedness for the purpose of building a new school building, which increase has been held invalid, that such invalidity thereof would affect the validity of the condemnation proceedings, but we cannot agree with such contention. We quote from our opinion filed in support of our decree *nisi*, which we reiterate and affirm, as follows: .

"Stress has been placed upon the fact that plaintiff's land was to have been taken to provide a site upon which was to have been erected and equipped a school-house from funds to have been raised by an increase of indebtedness which has been declared invalid. None could successfully maintain that every condemnation proceeding must be preceded by a provision for funds with which to pay damages caused by taking the land. Section 606 pledges the funds which may be raised by taxation, and makes them security to the owner for the land taken. The condemnation proceeding had in the instant case is entirely separate and apart from the proceeding to increase the debt, and the latter cannot be considered in disposing of this case."

Exceptions 3 to 16, inclusive, are, therefore, accordingly dismissed.

Exception 17 complains of our finding that there was no abuse of sound discretion by the defendants in selecting the land of the plaintiff for condemnation, and urges that such is a conclusion of law rather than a finding of fact. We may have erred in form, but not in substance. The plaintiff has failed to show abuse of sound discretion on the part of the defendant school district, and the burden was on her to do so. The question of the necessity for a new school building, its location and the purchase of a site are matters within the sound discretion of the school board, and courts will interfere with the decision of the board only where there is an abuse of discretion. The decision of the school directors is final, notwithstanding the fact that the board has submitted the matter to a vote of the people, and the decision of the board is different from that indicated by the people: Bard *v.* Leacock Township School District, 17 Del. Co. Reps. 191.

Exception 17 is, therefore, accordingly dismissed.

Exception 18 again raises the question of site and its connection with the bond issue declared to have been invalid. We have spoken of this and need not reiterate such here. The exception is accordingly dismissed.

Exception 19 complains of our failure to find that the defendants, between Aug. 2, 1926, and Sept. 8, 1926, removed valuable timber from plaintiff's land and partially destroyed her crops. We have shown that the resolution of Aug. 2, 1926, was cured of the only existing defect, to wit, the failure to

record the vote, by the Act of May 11, 1927, P. L. 965. The condemnation was, therefore, complete, and such facts as are averred in this exception are material only upon the determination of plaintiff's damages in the manner prescribed by the School Code. The exception is accordingly dismissed.

Exception 20 complains that we did not find as a fact that, by agreement of counsel of record, this case and that of Beaver et al. *v.* these same defendants were tried together, with the understanding that the evidence, so far as it was admissible, was to apply in both cases. The Chancellor sitting at the time of the taking of testimony so regarded the agreement, our immediate predecessor likewise so recognized the agreement, and in our disposition of the case we had but the one record from which to adduce our findings and conclusions thereon. In fact, it was a procedure had for the convenience of court, counsel and litigants, and we can see no merit in the exception. It is, therefore, accordingly dismissed.

Exception 21 has already been covered in this opinion in our remarks relative to exceptions 3 to 16, inclusive. For reasons therein stated, the exception is dismissed.

Exception 23 complains that the decree as framed vests title in fee simple in the defendant school district. We find no error in this, as section 607 of the School Code specifically provides as follows:

"Section 607. The title to all real estate acquired by any school district in this Commonwealth by condemnation proceedings, as herein provided for, shall be vested in such school district in fee simple."

Exception 23 is, therefore, accordingly dismissed.

Exceptions 24 and 25 complain of the imposition of the costs upon the plaintiff. We commiserate with any one compelled to pay, but we have no right to relieve this plaintiff under the present record. We fully appreciate statements of her counsel as to her thrift and industry in clearing her land of stones and brush and in changing it from a barren and ugly tract to a fruitful and comely little home in the hills, but the power of the sovereign state surmounts sentiment and places necessity as paramount. Landmarks of much more ancient origin than the lands of the plaintiff have fallen before the needs of the Commonwealth. The doors of our courts are open to provide for proper compensation for her loss and to protect her in securing payment of the same. She must get in step with modern progress and leave behind her any mediæval tendencies which may linger from beyond the seas. She undertook to establish a case, not for the public good, but *contra* thereto. Had she been successful, none would have benefited but herself. She has entailed upon the taxpayers of the defendant school district much expense and annoyance. She has failed to maintain that which she asserted. She has not met the burden which she assumed. Exceptions 24 and 25 are accordingly dismissed.

We hope, for the sake of the plaintiff, that the generous spirit shown by the defendant school district at the time of the argument of these exceptions, relative to the costs, still exists. To play our part in giving the plaintiff every chance to accept the generosity of the defendant school district, we shall not frame the final decree at this time, but will invoke the provisions of Rule 73 of the Equity Rules, and impose that burden upon the solicitor for the defendant school district, subject to compliance with the requirements of said rule, in the hope that some plan may arise, solely as of grace, whereby this plaintiff may be relieved from the burden of costs, which as of right we have been compelled to impose upon her. It is, therefore, accordingly ordered:

354

And now, Jan. 8, 1929, it is ordered that final decree herein shall be drawn by the solicitor for the defendant school district, the School District of the Township of Spring, and that a copy thereof shall be served, when drawn, upon the solicitor for the plaintiff, Annie Zelesnick, who shall be accorded a period of three days from the time of such service, unless extended by further order of the court, for the filing of exceptions thereto, at the expiration of which said period of three days or extension thereof, if allowed, the said draft, as prepared by the solicitor for the said defendant school district, together with such exceptions as may be filed, if any, shall be presented to the court, whereupon such decree will be entered as justice and equity require.

From S. D. Gettig, Bellefonte, Pa.