**Nina L. STACKHOUSE, Appellant,**

v.

**Joseph E. STACKHOUSE, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 2004.

Filed Nov. 10, 2004.

Thomas D. O'Shea, York, for appellant.

Daniel Fennick, York, for appellee.

BEFORE: KLEIN, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶1 Nina L. Stackhouse (Nina) appeals the trial court's order denying her claim for alimony *pendente lite* (APL) and dismissing her complaint in divorce. The court determined that because the parties had never entered a licensed ceremonial marriage, Nina's claims are precluded by a decision of the Commonwealth Court that purported to abolish common law marriage in Pennsylvania. *See PNC Bank v. Workers' Comp. Appeal Bd. (Stamos),* 831 A.2d 1269 (Pa.Cmwlth.2003). Nina contends that the trial court erred in its application of the Commonwealth Court's decision. Because we concur in Nina's assessment, we reverse the trial court's order.

¶2 Nina asserts that on April 10, 1993, she and Joseph E. Stackhouse exchanged marriage vows in a private ceremony in Niagara Falls, Canada. She acknowledges, however, that they never obtained a marriage license. Following their alleged exchange, Joseph and Nina returned to Pennsylvania and took up residence at 70 Locust Grove Road in York, where they continued to reside together until September 2003, when Nina moved elsewhere. During the parties' co-habitation, Nina adopted Joseph's surname, purportedly at his request, and the parties held themselves out as husband and wife in every manner of business transaction. In addition, the parties filed joint tax returns with the Internal Revenue Service from 1993 through 1998.

¶3 On October 6, 2003, Nina filed the underlying claim in divorce on the grounds

that the parties' "marriage" was irretrievably broken. In her complaint, she sought, *inter alia*, equitable distribution, alimony and APL, and continued maintenance and beneficiary designations on existing policies of life and health insurance pursuant to 23 Pa.C.S. § 3502(d). The trial court assigned the parties' case to a Domestic Relations hearing officer, who entered a recommendation adverse to Nina's claims. Nina then filed a demand for *de novo* hearing and the trial court scheduled a hearing for March 16, 2004. Although the court convened what purported to be a "hearing," the trial judge did not receive evidence and, following oral argument from counsel, granted Joseph's motion to dismiss. In support of its decision, the court cited the Commonwealth Court's decision in *PNC Bank, supra*, disposing of Nina's claims as a matter of law. Nina then filed this appeal, raising the following questions for our review:

I.  DID THE TRIAL COURT ERR IN DISMISSING WIFE'S ALIMONY AND DIVORCE CLAIMS WHEN THE DOCTRINE OF COMMON LAW MARRIAGE HAS NOT BEEN ABOLISHED BY THE SUPERIOR COURT OR THE SUPREME COURT OF PENNSYLVANIA, AND SUCH ACTION HAS BEEN DEFERRED EXPRESSLY TO THE LEGISLATURE?

II. DID THE TRIAL COURT ERR IN DISMISSING WIFE'S ALIMONY AND DIVORCE CLAIMS EVEN IF THE DOCTRINE OF COMMON LAW MARRIAGE HAS BEEN PROSPECTIVELY ABOLISHED BY THE COMMONWEALTH COURT, WHERE WIFE SEPARATED FROM HUSBAND WEEKS BEFORE [THE] PURPORTED ABOLISHMENT AND RELIED ON LONGSTAND-ING COMMON-LAW DOCTRINE?

Brief for Appellant at 5.

¶ 4 Both of Nina's questions challenge the trial court's disposition of her claim for APL. Our standard of review of a trial court's order allows us to determine only whether the trial court committed an error of law or abused its discretion. *See Lobaugh v. Lobaugh*, 753 A.2d 834, 835 (Pa.Super.2000). "An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record." *Id.*

¶ 5 In support of her first question, Nina contends that the trial court erred in dismissing her complaint in reliance on the Commonwealth Court's holding in *PNC Bank*, 831 A.2d 1269, which purported to abolish common law marriage prospectively from the date of its decision. Nina argues that common law marriage is a time-honored practice that our Supreme Court has chosen not to disturb, *see Staudenmayer v. Staudenmayer*, 552 Pa. 253, 714 A.2d 1016 (1998), and that the decision of the Commonwealth Court exceeds the proper scope of its appellate review. Brief for Appellant at 10. Nina suggests accordingly that we should disregard it here, noting that one panel of this Court has already done so. Brief for Appellant at 10 (quoting *Bell v. Ferraro*, 849 A.2d 1233, 1234 n. 2 (Pa.Super.2004)).

¶ 6 We recognize that this Court has, indeed, expressed its reservations about the precedential effect of the decision in *PNC Bank*. As Nina argues, in *Bell* we declined to apply it based on the following observation:

We recognize that the Commonwealth Court has purported to prospectively abolish common law marriage in the context of Workers' Compensation Claims. *PNC Bank Corp. v. W.C.A.B.,*

831 A.2d 1269 (Pa.Cmwlth.2003). We point out, however, that (1) we are not bound by decisions of the Commonwealth Court, and (2) both this Court and our Supreme Court have declined the invitation to abolish common law marriage, deferring such action to the legislature. *See e.g., Staudenmayer,* 552 Pa. 253, 714 A.2d 1016 (1998); *Interest of Miller,* 301 Pa.Super. 511, 448 A.2d 25 (1982).

*Bell,* 849 A.2d at 1234 n. 2. We proceeded accordingly in *Bell,* applying the legal precepts on which common law marriage is based, concluding in that case that the appellant had failed to adduce sufficient evidence to sustain her claim on the merits. *See id.* at 1235.

¶ 7 Significantly, our reluctance in *Bell* to apply the holding in *PNC Bank* derived substantially from our Supreme Court's decision in *Staudenmayer, supra.* In *Bell,* we summarized the decision in *Staudenmayer* with the observation that the Supreme Court had "declined the invitation to abolish common law marriage, deferring such action to the legislature." Nevertheless, a close read of *Staudenmayer* demonstrates that the Supreme Court's discussion of common law marriage, though clearly condemnatory of the practice, does not constitute a holding on its continued viability and does not appear to call for legislative action. Although the Majority in *Staudenmayer* recognized that "the doctrine's continued viability is seriously in question[,]" it declined to sound its death knell as "the appellant never raised the validity of the common-law marriage doctrine as an issue[.]" 714 A.2d at 1020 n. 4. Moreover, the opinion does not appear even to acknowledge a legislative role in the perpetuation of this court-created doctrine. Accordingly, we are not convinced that the reference in *Bell,* on which Nina relies to show trial court error, is sufficient to achieve its assigned task. Although we

agree that the decisions of the Commonwealth Court are not controlling in matters before the Superior Court, they remain precedential in trial courts across the Commonwealth. Thus, absent affirmative direction from the Supreme Court rejecting the holding in *PNC Bank,* we cannot conclude that the trial court erred, *per se,* in applying it.

■ ¶ 8 In so stating, we assume no position on the holding or rationale of the Commonwealth Court in *PNC Bank;* nor do we reach a conclusion concerning the continued viability of common law marriage in Pennsylvania. Although, as the Commonwealth Court recognized, both the Majority and Concurring decisions in *Staudenmayer* herald the abolition of the common law marriage doctrine, *see PNC Bank,* 831 A.2d at 1282 (quoting *Republic Steel v. Maddox,* 379 U.S. 650, 667, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (Black J., dissenting) ("Our Supreme Court 'has raised the overruling axe so high that its falling is just about as certain as the changing of the season.'")), its imminent demise, even if treated as a certainty, does not salvage the trial court's decision here. Even accepting the decision in *PNC Bank* as authority for the court's disposition, we are compelled to conclude, as Nina advances in her second question, that the trial court misapplied it by failing to reckon the limitations imposed by the purely prospective application that case requires.

¶ 9 In support of her second question, Nina argues that "immediate application of the *PNC Bank* decision would nullify existing common law marriages," voiding her existing contract right "simply because she did not file her claim before *PNC Bank* was decided." Brief for Appellant at 16. Nina contends accordingly that "[i]n order that this decision does not interfere with existing contract rights, parties such as

Wife must be able to assert a common law marriage claim when the facts that created that status existed prior to September 13, 2003[,] [the date on which *PNC Bank* was decided.]" Brief for Appellant on 8.

¶ 10 Our Supreme Court has recognized four approaches to applying a decision announcing a new rule of law or, as in *PNC Bank*, abrogating one of long-standing. *See Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146, 1150 n. 8 (1997), *questioned on other grounds, Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 153 n. 11, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003). Adopting the concurrence of Mr. Justice Zappala in *Blackwell v. Commonwealth, State Ethics Comm'n*, 527 Pa. 172, 589 A.2d 1094 (1991), the Court delineated the four approaches as follows:

> The first approach, in which a new rule is not even applied to the parties to the case in which the rule is announced, may be described as giving the new rule "purely prospective effect". The second approach, in which the new rule is applied to the parties to the case in which the rule is announced and litigation commenced thereafter, is best described, I believe, as giving the new rule "prospective effect".... The third approach, in which the new rule is applied to the case in which it is announced and all other cases then pending on direct review where the issue is raised, may be said to give the new rule "retroactive effect".... The fourth approach, in which the new rule is applied even where the issue has been finally decided at the time of the decision announcing the new rule but later is asserted in collateral proceedings, may be described as giving the new rule "fully retroactive effect".

*See Cleveland*, 690 A.2d at 1150 n. 8.

¶ 11 By general rule, judicial decisions are most frequently applied retroactively. *See Blackwell*, 589 A.2d at 1099. Nevertheless, the extent to which a decision may be applied to matters preceding the date of decision must be evaluated on a case by case basis in recognition of several controlling factors. *See id.* In this regard, our Supreme Court has determined that "the threshold test in deciding whether a new decision might be given prospective application only is whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285, 1289 (1977) (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)). Provided this threshold is met, the court must consider further: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule." *Blackwell*, 589 A.2d at 1099 (citing *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)). Our Supreme Court has deemed this third factor, which requires that we weigh the inequity imposed by retroactive application, "the most fundamental in the case law." *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80, 84 n. 4 (1980) (quoting *Chevron Oil Co.*, 404 U.S. at 106–07, 92 S.Ct. 349) ("[W]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases to avoid the injustice or hardship by a holding of nonretroactivity.").

¶ 12 In *PNC Bank*, the Commonwealth Court weighed these concerns, and on that basis, ultimately limited the rule abolishing common law marriage to "purely prospective application." 831 A.2d at 1283. The Court reasoned that

The benefits of the new rule will generally only be felt in the future no matter how it is applied. Persons can arrange their affairs only for the present and future; retroactive application will not cure mistakes made in the past based on misunderstanding of the old law. A clear rule will assist the courts only in deciding future cases; upsetting cases properly decided under the old law will aid neither the courts nor the litigants. Similarly, furthering the health and welfare policies of the Marriage Law and reducing the need for litigation can occur only in the future. In addition, the old rule was of such longstanding application that many have undoubtedly relied upon it, including the parties whose rights are now before the court. Finally, prospective application will give our Supreme Court an opportunity to review our holding, and minimize any disruption that might result should we have somehow misunderstood that body's intention.

*Id.* Unfortunately, our Supreme Court was not afforded the opportunity to review the holding in *PNC Bank,* as neither of the parties sought allowance of appeal.

¶ 13 Nevertheless, because the parties now before us are among the "many [who] have undoubtedly relied upon [the old rule]," *id.,* we are compelled to define the parameters of "purely prospective application" as it applies to common law marriage. The Commonwealth Court determined "henceforth, [to] recognize as valid only those Pennsylvania marriages entered into pursuant to the Marriage Law procedures [prescribed by 23 Pa.C.S. § 1101–1905]." *Id.* at 1282. Although such application is ostensibly prospective, its effect on the parties in this case, as well as all others in common law marriages entered prior to the date of decision in *PNC Bank* (September 13, 2003), would appear to be retroactive. Regardless of the date on which a party files her action, the fact remains that if she entered a common law marriage prior to September 13, 2003, she acquired myriad legal rights and entitlements associated with that status. Should we decline to recognize such rights when the claimant/common law spouse later attempts to exercise them, we would in fact divest her of rights she formerly enjoyed and on the existence of which she lawfully relied. Thus, imposition of the rule in *PNC Bank,* as Joseph urges, would work substantial injustice in the denial of due process to address rights that Nina ostensibly accrued before the Commonwealth Court ever rendered its decision. *Cf. Gibson,* 415 A.2d at 83 (recognizing Fourteenth Amendment protection of right of action accrued prior to adoption of new law.)

¶ 14 For that very reason, our Supreme Court has long recognized a principle of "general jurisprudence" that "[a] law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force do not thereby cease. It would be an absolute injustice to abolish with the law all of the effects it had produced." *Id.* (quoting *Lewis v. Pa. R.R. Co.,* 220 Pa. 317, 69 A. 821, 823 (1908)). The Court has admonished accordingly "that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law." *Gibson,* 415 A.2d at 83 (quoting *Menges v. Dentler,* 33 Pa. 495, 498–99 (1859)). Although this limitation most frequently applies to claims affected by subsequent legislative enactment, *see id.,* the same precept applies to judicial decision-making where the holding announced bears the prospect of substantial disadvantage to litigants who accrued rights

under the prior law. *See Blackwell,* 589 A.2d at 1100 (quoting *Gibson,* 415 A.2d at 84) ("The prime impetus behind this occasional willingness [to apply a judicial decision prospectively] is the concern that a novel decision will unfairly prejudice those formerly advantaged by the old rules.").

¶ 15 We recognize, as did the Court in *PNC Bank,* that the rule announced abolishing common law marriage can be applied only prospectively. Given the longevity of the practice of common law marriage in this Commonwealth, the decision in *PNC Bank* is indeed novel and undoubtedly stands to prejudice those formerly advantaged by the "old rule[ ]." *See id.* It is beyond peradventure that a valid marriage secures for husband and wife substantial benefits and legal protections unavailable to unmarried citizens. Nevertheless, were we to limit future recognition of common law marriages in accordance with application suggested by *PNC Bank, see* 831 A.2d at 1282 ("henceforth, this court will recognize as valid only those Pennsylvania marriages entered into pursuant to the Marriage Law procedures"), we would effectively deprive those very persons of their accrued rights.

¶ 16 As our Supreme Court recognized in *Gibson,* the rights accrued to parties under a former rule of law must be determined not merely with reference to the date on which they commenced their legal action, but in consideration of the transaction that vested their rights. *See Gibson,* 415 A.2d at 83 (quoting *Menges,* 33 Pa. at 498–99). Regardless of the date on which a party to a common law marriage files his or her action to seek vested rights arising from the marriage, those rights must be recognized and enforced. *See id.* Any other application of the holding in *PNC Bank* is in fact retroactive, assuring that parties to common law mar-

riages that existed before September 13, 2003, are denied entitlements and protections to which they were entitled under the former state of the law. We conclude accordingly that the date on which the evidence establishes the creation of a common law marriage, if it establishes one at all, is a critical determination upon which depends the rule of law to be applied. *See id.* (quoting *Menges,* 33 Pa. at 498–99). Although the validity of common law unions entered after the date of decision in *PNC Bank* may rightly be questioned by any party, those entered before its date of decision are entitled to enforcement of any right they formerly enjoyed regardless of the date on which their action is commenced or review of their claims undertaken. Plainly stated, such marriages are "grandfathered." *See id.* (quoting *Lewis v. Pa. R.R. Co.,* 220 Pa. 317, 69 A. 821, 823 (1908)) ("A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force do not thereby cease.").

¶ 17 In this case, the trial court made no determination of the date on which the parties' common law marriage had been entered, if it in fact occurred, and thus, potentially failed to accord them the rights they had acquired under the "old rule." *See id.* Further, the court did not receive evidence to determine if, in fact, Nina could establish the parties had entered a valid common law marriage. This was error. Although the parties dispute the legal status of their relationship, their averments appear to agree that, whatever its nature, the transaction or series of transactions that brought it about occurred before the date of decision in *PNC Bank.* Indeed, even if the parties had contested the date of the common law "marriage," the averment of facts sufficient to establish the existence of a marriage imposes on the trial court an obligation to allow develop-

ment of a factual record by which the proponent can substantiate the claim. *See Staudenmayer,* 714 A.2d at 1020 (enumerating the elements of common law marriage). Regardless of whether the proponent is ultimately able to prevail on the merits, if she avers that the marriage existed before the date of decision in *PNC Bank,* she must be accorded the opportunity to prove her allegation. Due process requires no less.

¶ 18 Order **REVERSED.** Case **RE-MANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**

¶ 19 KLEIN, J. files a Concurring Statement.

CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I agree that even if *PNC Bank* were a reasonable statement of the law of this Commonwealth, we would not apply it retroactively. I have no problem in saying that all common law marriages effectively entered into prior to the date of *PNC Bank* are valid. However, I withhold any comment on the holding of *PNC Bank* until the matter is squarely before us.

¶ 2 I do not believe that we would necessarily follow the analysis of the Commonwealth Court and therefore hesitate to approach this issue in this case, even in *dicta.* I note that there was little incentive for the "losing" party in *PNC Bank* to take an appeal from the Commonwealth Court's statement supposedly abolishing common law marriage since the ruling only applied to future common law marriages. The common law marriage in *PNC Bank* was upheld and the workers' compensation benefits were awarded to the common law spouse. Thus, there was no real issue to appeal to the Pennsylvania Supreme Court.

¶ 3 I recognize the trouble that conflicting decisions of the Commonwealth Court and Superior Court present to trial judges and trial lawyers. However, because it appears to me that there is such a strong argument that a long-standing principle such as common law marriage should not be overturned by an intermediate appellate court, I am very reluctant to accord *PNC Bank* any credence until the issue is argued before our Court in a manner that will permit an appeal to the Supreme Court.