## Norman *against* Heist.

An Act of Assembly declaring the children of a bastard child able and capable to inherit and transmit the estate of their deceased mother, as fully as if the said bastard child had been born in wedlock, does not devest real estate which had previously passed by descent from the mother to her brothers, so as to vest it in the children of the deceased bastard child.

· The Legislature cannot take the property of one individual, with or without compensation, in order to give it to another.

ERROR to the Court of Common Pleas of *Montgomery* county, in an ejectment brought by Joseph Norman and David Norman against Charles Heist, in which the court rendered judgment for the defendant on the following special verdict:

Ann Norman, afterwards Ann Ottinger, was seised in fee of the land claimed in this ejectment, and had an illegitimate son who was born about the year 1790. That in the year 1818 the said Ann Norman was duly joined in lawful wedlock to Christopher Ottinger, the father of the said illegitimate child, who was called and known by the name of Christopher Norman. That on the 2d of April 1841, the Legislature of Pennsylvania passed an Act, which was approved of on the said day by the Governor, in the following words, to wit: "Section 17. That the children and heirs of Christopher Norman, a natural child of Ann Ottinger deceased, widow of Christopher Ottinger, late of Montgomery county, deceased, shall be able and capable in law to inherit and transmit the estate of the said Ann Ottinger deceased, and any other estate, as fully and completely, to all intents and purposes, as if the said Christopher Norman had been born in lawful wedlock; and said children and heirs shall enjoy all the other rights, benefits and advantages of children whose ancestors were born in lawful wedlock." That the said Ann Ottinger departed this life on the 6th of September 1840. That her son, Christopher Norman, died in the year 1832, leaving issue two children, to wit, Ann, the wife of Charles Heist, the defendant; Mary, the wife of George Dotts; and one grandchild called Charles Ottinger, the only child of Rachel, another daughter of the said Ann. That the said Rachel, the wife of Charles Ottinger, died in 1832. That on the death of the said Ann, her heirs at law were her two brothers,

[Norman v. Heist.]

Joseph and David Norman, the plaintiffs in this action, she having left no husband or lawful issue. That since the marriage of the said Christopher Ottinger with the said Ann, they lived and resided on the said property with the said Christopher Norman, and the grandchildren before mentioned, who are still in possession.

On the above facts, the jury as to the law are ignorant, which they refer to the court. If the court should be of opinion that the above-recited Act of Assembly at the time of its passage was constitutional, and vested the said estate in the grandchildren of the said Ann, they then find for the defendant. But if the court should be of opinion that the said Act was unconstitutional, and did not lawfully vest the right to the said estate in the said grandchildren, then they find for the plaintiffs, with six cents damages and six cents costs.

Errors assigned:

I. The court erred in rendering judgment for the defendant,
    1. Because the said Act of Assembly, referred to in the case stated, is unconstitutional.
    2. Because the said Act of Assembly, whether constitutional or not, did not vest the right to the real estate in question in the defendant.

II. The plaintiffs acquired a good and indefeasible title to the said estate immediately upon the decease of their sister, Ann Ottinger, and before the passage of the said Act of Assembly; and the judgment of the court ought therefore to have been in their favour on the case stated.

*Mulvany*, for the plaintiff in error, referred to 9 *Cow.* 664; 4 *Johns.* 75; 3 *Story's Com.* 386; 19 *Johns.* 198; 5 *Cow.* 346; 1 *Yeates* 260; 2 *Dall.* 310.

*Sterigere*, contra, cited 10 *Serg. & Rawle* 72, 101; 16 *Serg. & Rawle* 35; 6 *Serg. & Rawle* 49; 1 *Binn.* 170; 1 *Watts* 330; 2 *Rawle* 374; 3 *Whart.* 484; 2 *Watts & Serg.* 272; 7 *Watts* 301; 4 *Serg. & Rawle* 401; 4 *Burr.* 2460; 3 *Dall.* 386; *Baldw.* 360.

The opinion of the Court was delivered by

GIBSON, C. J. — A bastard cannot inherit, by the common law, because he is the son of nobody, and has the blood of no ancestor in him; neither can he transmit his property by descent, except to his own issue. Then what is this statute? "The children and heirs of Christopher Norman, a natural son of Ann Ottinger deceased," say the Legislature, "shall be *able* and *capable*, in law, to inherit and transmit the estate of the said Ann Ottinger, and any other, as fully and completely, to all intents and purposes, as if the said Christopher Norman had been born in lawful wedlock; and the said children and heirs shall enjoy all the rights, benefits, and advantages of children whose ancestors were born in lawful

[Norman v. Heist.]

wedlock." Not a word in this about devesting the estate which had vested in Ann's brother at her death. All the provisions of the statute are enabling and prospective, and their object is distinctly to give the blood of Christopher Norman, dead, an inheritable source, as well as a descendible quality, which it had not when he was living; and to give his children a capacity to take, through him, whatever estate should descend to them from any of his maternal ancestors. Such is the import of the context as well as the meaning of the words. The estate which passed to Ann's brothers by the intestate laws, may even yet descend to them in default of issue of the brothers, and thus the statute have a legitimate effect. We dare not say that more was intended, and by that accuse the Legislature of an attempt to break their promise in the presence of Almighty God, to support the Constitution, which declares that no citizen shall be deprived of his life, liberty or *property*, unless by the judgment of his peers or the law of the land. What law? Undoubtedly, a pre-existent rule of conduct, declarative of a penalty for a prohibited act; not an *ex post facto* rescript or decree made for the occasion. The design of the convention was to exclude arbitrary power from every branch of the government; and there would be no exclusion of it, if such rescripts or decrees were allowed to take effect in the form of a statute. The right of property has no foundation or security but the law; and when the Legislature shall successfully attempt to overturn it, even in a single instance, the liberty of the citizen will be no more. This estate was lawfully vested in the plaintiffs, who were the next heirs to their intestate sister, at her death; it was theirs in full property; it was guaranteed to them by the Constitution and the laws; and to have despoiled them of it in favour of the supposed natural right of the grandchildren, would have been as much an act of despotic power, as it would had the grandchildren been strangers to the intestate's blood. Take it that they had the same claim, on the score of birthright, which their father might be supposed to have had; yet still, as title is the creature of civil regulation, even a legitimate child has no natural right of succession to the property of its parent. The right of a proprietor, living or dying, to pass by those who are nearest in blood to him, and bestow his bounty on strangers, is one of the most sacred incidents of ownership; and it is very often exercised. This intestate had a right to give her estate at her pleasure; and she did no less by leaving it to pass to her legitimate brothers by the intestate laws, instead of giving it to the children of her illegitimate son by will. Who can say that this was not the result of design, or that her brothers were not as dear to her as her grandchildren? Few parents think it just to put an illegitimate child on a footing with their legitimate offspring; and when they come to weigh the claims of brothers and sisters against those of illegitimate descendants still more remote, they may naturally choose to give the

[Norman v. Heist.]

former the preponderance. The grandmother, in this instance, must be supposed to have known the consequences of *dying* without a will; and her intestacy was perhaps less the effect of accident than design. Had the Legislature said otherwise, they would have spoken too confidently about a matter in regard to which every one is peculiarly liable to be mistaken. The difficulty of even approximating the truth of such a case, shows how readily they would slide into error, were they to exercise a power to regulate the titles to property by their sense of natural justice, and make wills for those who do not choose to make them for themselves. Happily they have no such power. It was deemed necessary to insert a special provision in the Constitution to enable them to take private property even for public use, and on compensation made; but it was not deemed necessary to disable them specially in regard to taking the property of an individual, with or without compensation, in order to give it to another, not only because the general provision in the bill of rights was deemed sufficiently explicit for that, but because it was expected that no Legislature would be so regardless of right as to attempt it. Were this reasonable expectation to be disappointed, it would become our plain and imperative duty to obey the immediate and paramount will of the people expressed by their voices in the adoption of the Constitution, rather than the repugnant will of their delegates acting under a restricted, but transcended authority. But there has been no actual infringement of the Constitution in this respect; and the effect of the statute, in regard to it, has been misconceived. Still the happening of the contingency on which it may, by a remote possibility, vest the estate in the defendants, has not arrived; and the plaintiffs must have judgment.

Judgment of the court below reversed, and judgment here on the special verdict for the plaintiffs.