Shackelford, J.,
delivered the opinion of the Court.
This is a petition filed in the Circuit Court of Shelby, to have a portion of the land lying in the city of Memphis, between Poplar and Beal Streets, known as “The Promenade,” condemned for the use of the petitioners. The substance of which, is: The petitioners were incorporated on the 18th of May, 1866, by the Legislature, under the name and style of “The Memphis Freight Company,” to have succession for fifty years. That privilege was given to it by its charter, for loading and *421 unloading freight, goods, cotton, etc., on or from steamboats, or other water craft, that may touch at the port of Memphis; and, for the purpose of carrying on said business, the company is granted the right and privilege of erecting, upon the summit of the East bank of the Mississippi River, in the city of Memphis, and between Poplar and Beal Streets, such sheds, railroad tracks, engines, and other equipments, as may be necessary for the prosecution of the business of hauling freight. They shall have the right to lay down railroad tracks from the sheds referred to, to the margin of the Mississippi River; provided, between Union Street and Market Street, said sheds shall be at least one hundred feet West of the buildings on the East side of Front Street; provided, in laying down said tracks, and the building of such shed, no greater inconvenience shall be given to the public, than can be avoided; and said track shall be so constructed, and the cars so operated, as not to inconvenience the public in the use of the street and levee. That on the — day of -, 1820, John Overton, and others, being the owners and proprietors in fee of the lands, included in the limits of the territory between Poplar and Beal Streets, did dedicate the same as public ground, for the purpose of a promenade, for the use of the citizens of Memphis and the public generally; and the same has been used and controlled by the city authorities of Memphis, up to the present time. They being privileged to construct lines of railroad, and to have the right of loading and unloading boats, as set forth in their charter, they are authorized to take the real estate of individuals not exceeding the amount *422 prescribed by law, as set forth in their charter, for the use and purposes therein prescribed, upon the payment of such damages as may be duly inquired of and assessed. And they pray, in order to carry out and perform the objects of their charter, to have allotted to them, out of the parcel of ground bordering on the Mississippi River, between Poplar and Beal Streets, known as “The Promenade,” two double railroad tracks, of sixteen feet width, each, from the West side of Front Street to the margin of the river; also, a space for ten sheds, of one hundred and twenty-five feet front, each, on Front Street, running back West, fifty feet, etc., to be used and enjoyed by said company for the term of their charter; that the same be decreed to them; that a jury be summoned to inquire of the damages, etc. The Mayor and Aldermen were made parties, and, in answer, admit the ground sought to be condemned for the use of the company, was, in 1820, by the proprietors of the lands, dedicated to the city of Memphis as a public promenade; and, by long usage, they have acquired , a right to the same. They resist the said application, and insist the said company have no right to have the same condemned, and the value assessed by a jury, as in case where private property is taken for public use, because said charter does not make any provision for such compensation, and is, therefore, null and void; and because the grounds have been dedicated for a special public purpose — a public promenade — and accepted by the Mayor and Aldermen; and this acceptance having been recognized and ratified, is not subject to be condemned for any other purpose; and the use for which *423 it is proposed to be condemned, is not a public one, but a private and speculative one. The cause was submitted to tbe Court, upon the agreement of counsel upon the statements in the petition and answer.
The Court was of opinion that the petitioners were not entitled to relief, and dismissed the petition; from which an appeal was taken to this Court.
The principal question presented for our consideration, is: Is the charter of the Memphis Freight Company, such as will authorize the Legislature to take private property for the use of the company, upon compensation ? For the determination of this question, it becomes necessary to examine the charter of this, company, and see if the object and purposes of its creation, are such a public use as will authorize the Legislature to vest in it the right to take private property, upon compensation, for its use; and if it falls within that class of internal improvements embraced within the provisions of chap. 10 of the Code, the company is authorized to construct railways from their sheds to the margin of the river, for the prosecution of their business of loading and unloading boats, to erect machinery, etc. These railways are not designed for public travel, but as a means to enable the company to carry out the object and purposes of their charter, in the prosecution of their business. The public is not interested in the erection of these railways, except in the facilities that may be afforded in the loading and unloading of boats; it is purely a private enterprise, giving superior advantages to the corporation, over those who have not the use of machinery. The grounds of this public prome *424 nade, were given, by tbe Act of incorporation, to build ten sbeds, one hundred and twenty-five feet front, and fifty feet deep. Tbe public is not benefitted by tbe building of these warehouses, except as a convenience. Can it be seriously insisted, tbe building of railway from these sbeds to the river falls within tbe provisions of the Code, ch. 10, sec. 1325, which provides: “Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll-bridge, road, causeway, or other work of internal improvement, to which the like privilege is conceded, may take the real estate of individuals, not exceeding the quantity prescribed, upon compensation, as provided by the other sections of the chapter.” We think the provisions of the sections embraced in ch. 10 of the Code, have no application to works designed alone for private enterprise, how much-soever, they may be a convenience to the public. To authorize the taking of private property by An Act of the Legislature, it must be for a public use. What is a public use, does not seem to be very clearly defined. Railroads, turnpikes, public roads, canals, etc., are means of intercommunication between different sections of the State, and are of public use; the streets and alleys of a city or town, are necessary for the use and convenience of the citizens.
In the case of the West River Bridge Company vs. Dick et als., 6 How., 547, it was held, it was not enough that there is An Act of incorporation, for a bridge or turnpike, or railroad, to make them public so as to take private property, constitutionally, without the owner’s consent; but their uses and objects must be *425 tbe use of tbe public, and must, in tbeir essence and character and liabilities, be public, within tbe meaning of tbe term public use.
This Court held, in Clark vs. White, 2 Swan, 549, tbe right of eminent domain, inherent in tbe State, can only be exercised for tbe public advantage, and not for that of any private person. The right of eminent domain, or inherent sovereign power, gives to the Legislature the control of private property for public uses, and for public uses only.
This principle is recognized and settled in 2 Kent, 340; 2 Peters, 253; 11 Wend., 149; 5 Page, 146.
There is a distinction between a public use and public convenience. To authorize the taking of private property for public use, the use must be for the people at large — for travelers, for all — and must also be compulsory by them, and not optional with the Corporators —must be a right by the people, and not a favor — must be under public regulations as to tolls, &c., &c.: 6 How., 546; 3 Kent, 270. But where it is a public convenience, not a necessity, the right to take private property does not exist.
The incorporation of a hotel company in a city, with right to construct lines of a railrod from the hotel to the river or depot, for the accommodation of the guests of the house, would be a public convenience, but would not authorize the Legislature to take the private property of the citizens of the town, whereon to erect the hotel, or to lay the lines of railroad. Churches and school-houses are public conveniences, but no one ever heard of private property being taken for such purposes.
*426 The right to take private property for public purposes, came before this Court in the case of Harding vs. Goodlett, 3 Yer., 41. In that case, it was held: “But although this right does exist, and the Government may take private property, allowing just compensation, Blackstone says it is an exercise of power which is indulged with great caution. It is only for public uses the State is authorized to exercise it; and because the interests of the community require that, for the good of the whole, the private right must yield. It is a power never exercised for the benefit of an individual.”
In the case of Harding, it was an application to condemn one acre of his land, to build a grist mill, saw and paper mill, under the provisions of the Act of 1777. The Court say: “ The saw and paper mill have no public character. The erection of these mills would be wholly for the private use of the petitioners.”
Apply these principles to the case under consideration. This company is incorporated and created a body politic, with power to sue and be sued, and have succession for 'fifty years, with capital stock of $300,000, with privilege to increase it to one million. The rights and privileges of the company are defined in the 16th section of their charter: “The privilege of loading and unloading freight, goods, wares and merchandise, cotton, or other articles of property, on or from boats or other water crafts, that may touch at the port of Memphis ; and for the purpose of carrying on said business, said corporation is granted the right and privilege to erect on the summit of the east bank of the Missis *427 sippi River, in the City of Memphis, between Poplar and Beal Streets, such sheds, railroads, tracks, engines and their equipments, as may he necessary for the prosecution of their business of hauling freight.”
Such are the powers granted to this corporation. The erection of these sheds and railroad tracks, have no public character, but are wholly for the use of the petitioners. It is an attempt to grant to an incorporated company, for individual purposes, private property dedicated for the use of the citizens of Memphis. It has been held and used for more than a fourth of a century for the purposes for which it was given by the grantors. Though the owner in fee holds lands subject to the right of eminent domain in the State, to be taken for public purposes, he can only be divested of that right when the exigency arises, and it must appear it was for a public use before he can be deprived of it, and that by just compensation.
It is insisted for the petitioners, it is the exclusive province of the Legislature to determine whether the purpose or object for which property is taken, is for a public use; and it is not within the judicial department of the Government to revise or control the intention of the Legislature, when expressed in the form of a legal enactment.'
This question is one by no means free of difficulty. The right of eminent domain remains with the sovereign people of the State, and they have the right to resume the possession of private property, in the manner directed by the Constitution and Statute laws of the State. *428 Whenever the public necessity requires, it shall be taken for public uses; but who is to judge of this necessity? Mr. Kent, in his Commentaries, says: “ It must undoubtedly rest, as a general rule, in the wisdom of the Legislature to determine when the public uses require the assumption of private property; but if they should take it for a purpose not of a public nature — as if the Legislature should take the property of A, and give it to B — or, if they should vacate a grant of property, or of a franchise, under the pretext of some public use or service, such cases would be gross abuses of their discretion, and fraudulent attacks on private right, and the law would be clearly unconstitutional and void. Real property, and the rights and privileges of private corporate bodies, are held by grant or charter from the Government; and it would be a violation of contract repugnant to the Constitution of the United States, to interfere with private property except under the limitations which have been mentioned : ” 2 Kent, 340. In support of this position, he cites 19 Wend., 659; 16 Mass., 330; 3 Yer., 41; 8 Dana’s Rep., 289; 1 Reese’s South Carolina, 381; 18 Wend., 14; 11 N. H., 19; which, we think, fully sustain the rule.
The rule, as announced by Mr. Kent, is correct, upon principle and authority. The right of private property is under the protection of the Constitution, and the Legislature has no power to take it for any private purpose, or to transfer it to another, whether, indemnity be provided or not. Any law which has the effect to transfer this right, against the owner’s consent, is void, *429 no matter under what pretext of policy or convenience it may be passed: 2 Swan, 549; 5 Watts & Serg., 171; 5 Page, 146.
There is nothing in this charter to show it was for a public use.
The Legislature has not fixed the rate of charges the company is to receive, as tolls for hauling freight upon their railroad, for storing it in their sheds, or loading and unloading boats. In the case of Harding vs. Goodlett, the Court, in their opinion, recites the various provisions of the Act regulating and controlling millers; giving them rights and privileges; defining their duties; and say, they quote these provisions of the law, to show the character of the use for which the citizen’s property is taken, when a part of his land is taken for the purpose of building a grist-mill; they say, it is emphatically a public use for which it is required, and to which it is appropriated. The grist-mill is a public mill; the miller is a public servant; he is allowed, by law, a compensation for his grinding; his duties are prescribed, and penalties imposed for a violation. In the case of the West River Bridge Company, referred to, Judge Woodbury says: “The uses for which the property is taken, must be under public regulation; it must be a right with the people to use the property; not optional with the owners.” These are evidences showing the purpose in taking private property for a public use. None exist in this case. It is simply An Act incorporating certain citizens a body politic and corporate, with the power to sue and be sued, have succession fifty years, and the property designated is *430 appropriated for their use. There is nothing in the charter showing it to he for a public use; there is no restriction on their charges for services; no duties are defined; no penalties for a violation of their duties; no regulations of toll. They are left free to act as private persons, in any manner that will best promote their interests.
In every case involving the constitutionality of a law passed by the Legislature, it is entitled to the most careful consideration of the Court, and the Acts of the Legislature should be examined with every presumption in favor of their validity. But when the Court is satisfied they are in violation of the Constitution, it is the imperative- duty of the Court to declare them void. The Act giving this corporation the right to appropriate the lands between Poplar and Beal streets, in the City of Memphis, for the purpose of erecting their sheds, is void; it is an attempt to take private property, not for a public use, but for private purposes; and we are satisfied, upon principle and authority, this attempt by the Legislature to exercise the right of eminent domain, by giving this property to this corporation, was not warranted by the Constitution, and falls within that class of cases referred to by Mr. Kent. It was an abuse of that discretion vested in the Legislature, and an unauthorized violation of private rights. 'In such cases, Courts have no discretion; they must declare such acts void.
It follows, therefore, that so much of said Act of incorporation, as authorizes said company to appropriate the lands between Poplar and Beal streets, for the *431 purposes of erecting their sheds and railways, is not warranted by the Constitution, and is, therefore, void.
Other questions have been discussed; hut, in the view we have taken of the case, it is unnecessary to express any opinion, as the principles settled are decisive of the case.