J-A15038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEONID ZELDICH, | |
| Appellant | No. 2641 EDA 2014 |

Appeal from the Order August 14, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006495-2008

BEFORE:  BOWES, MUNDY, and FITZGERALD,* JJ.

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED DECEMBER 07, 2015**

Today, the learned majority upholds retroactive application of a statute, SORNA,[1] to an individual who unquestionably had no notice of the new law at the time he pled guilty, or that a non-existent law would apply to him, or that he would have no ability or opportunity to escape its application.  In doing so, the majority must set aside seemingly every principle of contract law and overlook the serious constitutional problems with applying the statute to cases such as this.  If not for the fact that SORNA applies to sex offenders, a class of individuals which rightly deserves punishment and scorn, this Court's continued diminishment of constitutional

_____

[1] 42 Pa.C.S. § 9799.10-9799.41.

* Former Justice specially assigned to the Superior Court.

protections and lackluster application of contract law could not withstand scrutiny. For the reasons that follow, I respectfully dissent from the holding that Appellant must register as a sex offender for life where the trial court previously determined he was not a sexually violent predator ("SVP") subject to lifetime registration and the law at the time he entered his plea agreement only mandated ten years of registration.

Initially, I agree with Appellant that his contractual plea bargain was violated by the addition of material terms to the agreement that were not contemplated by the parties when it was entered. This Court continues to ignore that in virtually no other setting, aside from retroactive application of SORNA, does a court authorize material terms to be added to a contract after the fact. Rather than engage in an analysis of what terms were agreed upon by the parties when the agreement was entered, we have instead considered the absence of express evidence regarding a registration requirement as proof that the individual acquiesced to non-existent terms being imposed at a later date. **See Commonwealth v. Giannantonio**, 114 A.3d 429 (Pa.Super. 2015). Such an interpretation of the law is not only untenable, but it turns contractual analysis on its head. If we are to continue to construe plea bargains in a contractual manner as required by applicable precedent, **see Commonwealth v. Anderson**, 996 A.2d 1184, 1191 (Pa.Super. 2010), we should do so faithfully and not to achieve a desired result due to the nature of the offenders involved.

Instantly, the question is not only whether a ten-year period of registration was a material element of the plea agreement, but whether retroactive addition of lifetime registration adds a material element to the agreement. In ***Commonwealth v. Kroh***, 654 A.2d 1168, 1172 (Pa.Super. 1995), this Court set forth that "[a]lthough a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards." Consistent with this approach, the ***Kroh*** Court opined that ambiguities in the terms of the plea agreement are to be construed against the Commonwealth. ***Id***.

Under ordinary contract principles, the terms of a contract are those agreed to by the parties. Indeed, a contract requires six elements: (1) mutual assent; (2) consideration; (3) contracting parties; (4) an agreement that is sufficiently definite; (5) parties that have the legal capacity to make a contract; and (6) an absence of any legal prohibition to the formation of the agreement. John E. Murray Jr., *Murray on Contracts*, at 59 (4th Ed. 2001). In deciding the terms of a plea agreement, as with other contracts, we resolve any dispute by applying objective standards. ***Kroh***, ***supra*** at 1172. Contracts may be oral or written, and conduct or acts may evidence an agreement. Additional material terms generally do not become part of an agreement unless those terms are agreed upon either through a writing, an express oral agreement, or a course of performance, including the conduct of the parties.

Here, the actual terms of the agreement are relatively straightforward. The Commonwealth agreed to *nol pros* charges of involuntary deviate sexual intercourse ("IDSI"), attempted IDSI, burglary, criminal trespass, unlawful restraint, and harassment and amend its charge of attempted sexual assault to attempted aggravated indecent assault. In exchange, Appellant consented to plead guilty to attempted aggravated indecent assault, simple assault, and terroristic threats. The aggravated indecent assault charge mandated a ten-year period of registration. However, a plea to IDSI would have required lifetime reporting. In addition, Appellant may have been subject to lifetime reporting had his plea resulted in two separate adjudications of guilt for the following crimes: IDSI, attempted IDSI, or either attempted sexual assault or attempted aggravated indecent assault. *See Commonwealth v. Merolla*, 909 A.2d 337 (Pa.Super. 2006) (holding that multiple findings of guilt during one proceeding triggered lifetime registration).[2]

---

[2] The decision in **Merolla** has been questioned by a plurality of our Supreme Court, **Commonwealth v. Gehris**, 54 A.3d 862 (Pa. 2012) (OISR), and rejected by the Commonwealth Court. **A.S. v. Pennsylvania State Police**, 87 A.3d 917 (Pa.Cmwlth. 2014) (*en banc*). The Pennsylvania Supreme Court also granted allowance of appeal in **Commonwealth v. Mielnicki**, 71 A.3d 245 (Pa. 2013), to determine if **Merolla** was properly decided. However, the Supreme Court subsequently dismissed that appeal as improvidently granted. **Commonwealth v. Mielnicki**, 105 A.3d 1256 (Pa. 2014). At the time of the **Merolla** decision, and Appellant's plea, the term "convicted" was not defined in the Megan's Law statute. **See** former 42
*(Footnote Continued Next Page)*

The Commonwealth stipulated that it was "fully aware that [Appellant's] registration period under Megan's Law would only be 10 years unless he was determined to be a Sexually Violent Predator." Parties Stipulation, 8/11/14, at ¶ 2(a). Admittedly, it averred that Megan's Law registration was not a focus of the plea negotiations and that the prosecutor did not have a recollection of discussing registration with Appellant's plea counsel.

Nonetheless, it is evident that Appellant negotiated to remove a lifetime registration requirement. The IDSI charge, which mandated lifetime reporting, was *nol prossed*. Further, Appellant did not plead guilty to multiple crimes that would have potentially subjected him to lifetime registration. It beggars belief to claim that avoiding lifetime registration, absent a finding that he was an SVP, was not part of his plea agreement. The majority's claim that the "structure of plea does not evince an express or implied agreement upon a registration period[,] Majority Memorandum, at 13, is unsupported by the facts. Appellant did not plead guilty to crimes that would require lifetime registration or to multiple sex offenses.

*(Footnote Continued)* ───────────

Pa.C.S. § 9792. I have opined on the differing usages and meaning of the words "convicted" and "conviction" in legal matters. **See Commonwealth v. Thompson**, 106 A.3d 742 (Pa.Super. 2014) (Bowes, J., concurring). The term "convicted" is currently defined under SORNA and "[i]ncludes conviction by entry of plea of guilty or nolo contendere, conviction after trial or court martial and a finding of not guilty due to insanity or of guilty but mentally ill." 42 Pa.C.S. § 9799.12.

Further, the majority's attempted distinction of our decision in **Nase**, **supra**, on the grounds that defense counsel made statements therein regarding the defendant being subject to ten-years registration and no such comments were made herein is unpersuasive. In the present case, during Appellant's plea, he confirmed that unless he was determined to be an SVP, he would only be subject to a ten-year period of registration. At sentencing, after he was determined not to be an SVP, the Commonwealth posited, "[Appellant] would be subject to a ten-year reporting requirement." N.T., 9/22/09, at 5. **Nase**, therefore, is highly analogous. While defense counsel did not place on the record that a ten-year registration was at issue, both Appellant and the Commonwealth *acknowledged* that fact. Moreover, **Nase** recognized that the law existing at the time of the entry of a contract merges into that contract.

Appellant and the Commonwealth did not mutually assent to lifetime registration in exchange for Appellant's plea. Lifetime registration was not a term of the initial plea nor is it a term over which a reasonable person would not have negotiated. Were this any other contractual scenario, it would be beyond cavil that the Commonwealth could not retroactively add a material term to the plea bargain and require Appellant to register beyond ten years. *Cf. First National Bank of Pennsylvania v. Flanagan*, 528 a.2d 134, 137 (Pa. 1987) ("Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidence by their contract, imposing

- 6 -

conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation[.]").

In this respect, I add that retroactive application of any law, except ameliorative criminal law, has long been disfavored precisely because it is perceived as fundamentally unfair. William Blackstone, in his influential Commentaries on the Laws of England, posited, "All laws should be therefore made to commence *in futuro*, and be notified before their commencement[.]" 1 Tucker's Blackstone, 46 (Philadelphia, 1803). "[S]ince the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." ***Kaiser Aluminum & Chemical Corp. v. Bonjorno***, 494 U.S. 827, 841 (1990) (Scalia, J., concurring). Similarly, this Court in ***Anderson v. Sunray Elec. Inc.***, 98 A.2d 374, 375 (Pa.Super. 1953) (emphasis added), has recognized, "Unless the legislature clearly manifests its intention otherwise, no law may be construed to be retroactive, and **then only where it does not destroy vested rights or impair the obligations of contracts.**" ***See also*** 1 Pa.C.S. § 1926.[3]

While the legislature here did expressly indicate that this law would apply retroactively, that does not alter the fact that from the early days of

---

[3] 1 Pa.C.S. § 1926 codified Pennsylvania common law.

this Commonwealth, our courts have recognized the odious nature of retroactive civil laws. In **Commonwealth v. Duane**, 1 Binn. 601 (Pa. 1809), the Pennsylvania Supreme Court distinguished between the prohibition against civil retroactive laws and ameliorative retrospective criminal legislation. There, the defendant was indicted and found guilty of committing a libel against Pennsylvania's governor in his official capacity. However, prior to his judgment of sentence, the legislature passed a law stating that no person was to be prosecuted by indictment for publication of papers or for investigating the official conduct of men in a public capacity. Counsel for Duane argued that the law interfered with no vested right, did not violate any right of property, and effectively terminated his prosecution.

The Pennsylvania Supreme Court agreed, with Chief Justice Tilghman stating, "If the same expression had been used, as applied to a civil action, I should have thought myself warranted in giving it a different construction, because then it would have operated in a retrospective manner, so as to take away from a citizen a vested right. But there is a wide difference between a civil and a criminal action." **Id**. at 608-609.

Justice Joseph Story, writing while on circuit, offered a concise summary of retroactive civil laws, which has been utilized by courts in this Commonwealth. He opined, "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions

or considerations already past, must be deemed retrospective[.]" ***Society for the Propagation of the Gospel v. Wheeler***, 22 F.Cas. 756, 767 (1814).[4]  Justice Duncan of the Pennsylvania Supreme Court echoed this definition, cited Justice Story's opinion in his own opinion in ***Eakin v. Raub***, 12 Serg. & Rawle 330 (Pa. 1825), and recognized the distinction between the prohibition against civil retroactive law and ameliorative criminal legislation.  ***Id***. at 362.[5]

A number of other state courts have construed their versions of SORNA as violating constitutional retroactivity clauses or that state's *ex post facto* prohibition.  ***Starkey v. Oklahoma Dept. of Corrections***, 305 P.3d 1004 (Okla. 2013) (SORNA statute violated *ex post facto* clause of state constitution); ***Doe v. Department of Public Safety and Correctional***

---

[4]  This Court has defined a vested right as one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."  ***In re R.T.,*** 778 A.2d 670, 679 (Pa.Super. 2001).  In ***Eakin v. Raub***, 12 Serg. & Rawle 330, 360 (Pa. 1825), Justice Duncan opined, "a vested right is where a man has power to do certain actions, or to possess certain things, according to the laws of the land."  One's liberty interest is unquestionably a vested right, which is supposed to only be deprived via due process.

[5]  Civil retrospective law was also permissible where the law "does not violate the constitutional prohibitions" and provided "to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of recovering redress by legal proceedings."  ***Hepburn v. Curts***, 7 Watts 300, 301 (Pa. 1838).  Thus, statutory law that benefitted individuals without invading the vested rights of another was lawful.

*Services*, 62 A.3d 123 (Md. 2013) (Maryland sex offender statute violated *ex post facto* clause of state constitution); ***State v. Williams***, 952 N.E.2d 1108, 1113 (Ohio 2011) (Ohio SORNA statute violated state constitutional prohibition against retroactive laws); ***cf***. ***State v. Bodyke***, 933 N.E.2d 753 (Ohio 2010) (Ohio SORNA violated separation of powers) ***State v. Letalien,*** 985 A.2d 4 (Me. 2009) (*ex post facto* violation to apply retroactively the enhanced requirements of SORNA of 1999 when, by so doing, the application revises and enhances sex offender registration requirements that were a part of the offender's original sentence); ***but see Doe I v. Williams***, 61 A.3d 718 (Me. 2013) (SORNA statute at issue did not violate substantive or procedural due process or *ex post facto* clause).

Conversely, several states have upheld retroactive sex offender registration changes under *ex post facto* and due process challenges. ***Doe I v. Williams***, ***supra***; ***Roe v. Replogle***, 408 S.W.3d 759 (Mo. 2013) (federal SORNA law, applicable to residents of Missouri, did not violate substantive due process); ***Smith v. Commonwealth***, 743 S.E.2d 146 (Va. 2013). This Court has rejected a federal *ex post facto* challenge to SORNA. ***Commonwealth v. Perez***, 97 A.3d 747 (Pa.Super. 2014).[6]

---

[6] The Commonwealth Court in ***Coppolino v. Noonan***, 102 A.3d 1254 (Pa.Cmwlth. 2014), *affirmed*, 132 MAP 2014 (November 20, 2015), did hold that retroactive in-person registration under SORNA was unconstitutionally punitive. It severed that provision from the remainder of the law.
*(Footnote Continued Next Page)*

I acknowledge that this Court is bound by **Perez** and its conclusion that SORNA is not an *ex post facto* law since our courts do not consider SORNA to be punitive.[7]  Indeed, Appellant does not even attempt to advance such a position nor does he argue that under an originalist interpretation of the Pennsylvania Constitution's *ex post facto* clause, such a law should be classified as penal.  Of course, I note that even before the adoption of the Pennsylvania Constitution, the *Magna Carta* exclaimed, "No Freeman shall be taken, or imprisoned, or be disseised of his Freehold, or Liberties, or free Customs, or be outlawed, or exiled, or any otherwise destroyed; nor will we not pass upon him, nor condemn him, but by lawful Judgment of his Peers, or by Law of the Land."  **See In re Winship**,  397 U.S. 358, 378-379, (1970) (Black, J., dissenting).

As far back as 1642, Lord Edward Coke, in his influential Institutes, opined that "due process of law" is synonymous with "law of the land."  **Id**. at 379; **Hoboken Land**, **supra** at 276.[8]  Justice Curtis, writing in 1855 for the United States Supreme Court, opined,

*(Footnote Continued)* ‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒

[7]  I recognize that SORNA's requirements only occur as a direct result of a criminal conviction, are generally imposed at sentencing, except in cases where the defendant has already been sentenced, and are often more onerous than traditional probation and parole requirements.

[8] Appellant does argue that as a matter of due process he should only be required to register for ten years.

> The constitutions which had been adopted by the several States before the formation of the federal constitution, following the language of the great charter more closely, generally contained the words, 'but by the judgment of his peers, or the law of the land.' The ordinance of congress of July 13, 1787, for the government of the territory of the United States northwest of the River Ohio, used the same words.

*Murray v. Hoboken Land & Imp. Co.,* 59 U.S. 272, 276 (1855). He continued by acknowledging that the federal constitution "contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process." *Id*. However, the High Court set forth, "It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will." *Id*. Even before Justice Curtis' opinion, the Pennsylvania Supreme Court recognized that due process is not satisfied by the mere passage of legislation.[9]

_____

[9] Although the Pennsylvania Constitution does not utilize the term "due process," the phrase "law of the land," used in Article I, § 9, is synonymous with that term. *Craig v. Kline,* 65 Pa. 399, 413 (1870); *Murray v. Hoboken Land & Imp. Co.,* 59 U.S. 272, 276 (1855); *see also Commonwealth v. Kratsas*, 764 A.2d 20, 49 n.5 (2001); *Commonwealth v. Rose*, 81 A.3d 123, 126 n.2 (Pa.Super. 2013), *allowance of appeal granted on other ground*, 95 A.3d 274 (Pa. 2014); *Commonwealth v. Harrell,* 65 A.3d 420, 448 n.10 (Pa.Super. 2013) (Donohue, J., dissenting)).
*(Footnote Continued Next Page)*

In **Norman v. Heist**, 5 Watts & Serg. 171 (Pa. 1843), the Court held that Pennsylvania's law of the land provision was designed "to exclude arbitrary power from every branch of the government; and there would be no exclusion of it, if such rescripts or decrees were allowed to take effect in the form of a statute." **Heist**, **supra** at 173. There, the Pennsylvania High Court ruled that a statute that retroactively deprived a party of property violated due process. The "law of the land" had to be "a pre-existent rule of conduct[.]" **Id**. In **Brown v. Hummel**, 6 Pa. 86 (1847), the Pennsylvania Supreme Court eloquently stated,

> What, then, is the law of the land, as it relates to the protection of private rights? Does it mean bills of attainder in the shape of an act of Assembly, whereby a man's property is swept away from him without hearing trial, or judgment, or the opportunity of making known his rights or producing his evidence? It certainly does not. It was to guard against such things which had been common in the reign of the Stuarts and their predecessors, and with which our forefathers of the Anglo-Saxon race were familiar, that these irrevocable and unassailable provisions were introduced into the constitution. The law of the land does not mean acts of Assembly in regard to private rights, franchises, and interests, which are the subject of property and individual dominion. But it means what is clearly indicated by the other provisions of the bill of rights, to wit: the law of the individual case, as established in a fair and open trial, or an opportunity given for one in court, and by due course and process of law. "I am a Roman citizen," were once words of power, which brought

*(Footnote Continued)* ────────

Accordingly, Article I, § 9 of the Pennsylvania Constitution guarantees due process protections. That provision reads in relevant part, "nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa.Const. Art. I, § 9.

the proudest proconsul to a pause, when he was about to commit oppression: and the talismanic words, I am a citizen of Pennsylvania, secures to the individual his private rights, unless they are taken from him by a trial, where he has an opportunity of being heard by himself, his counsel, and his testimony, *more majorum*, according to the laws and customs of our fathers, and the securities and safeguards of the constitution.

*Hummel*, *supra* at 91.

Counsel in *Menges v. Dentler*, 33 Pa. 495 (1859), also argued that "law of the land" did not merely mean legislative acts. Rather, they maintained that laws that impaired or destroyed vested rights were in violation of due process. The *Dentler* Court considered both Article I, § 9 and Article I, § 11 of the Pennsylvania Constitution, and accepted that position. In doing so, it set forth,

These provisions are taken from Magna Charta; but they have higher value here than in England, just as a constitution adopted by the people is of higher value than a mere act of Parliament. Parliament may disregard Magna Charta, but our legislature must obey the constitution. These provisions are, therefore, imperative limitations of legislative authority, and imperative impositions of judicial duty.

*Dentler*, *supra* at 498. The Court continued,

The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties. If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.

*Id*. These principles should apply no less than when the vested right in question is not a property right but a liberty right against lifetime sex

offender registration where the defendant had no notice of increased registration requirements.[10]

In this regard, I add that the majority neglects to confront Appellant's constitutional argument relative to the Contract Clause of the United States and the Pennsylvania Constitution's sister provision. Since I believe Appellant is entitled to relief on other grounds, I will not explore this aspect of Appellant's argument.

In my view it is abundantly clear that increased registration violates Appellant's plea bargain, deprives him of procedural due process, and even implicates the separation of powers doctrine. Pursuant to this doctrine, "the legislature cannot invade the province of the judiciary by interfering with

---

[10] The only Pennsylvania Supreme Court opinion to address SORNA and procedural due process held that SORNA violated the rights of juveniles. **See In re J.B.**, 107 A.3d 1 (Pa. 2014). Therein, the High Court ruled that registration for juvenile offenders, all of whom were previously not subject to sex offender registration, violated due process. The juveniles in that case each had been adjudicated delinquent before SORNA's effective date, but were still subject to juvenile court supervision on that date. Thus, unlike Appellant herein, the juveniles were still under court supervision. Pursuant to SORNA, juveniles who were subject to the jurisdiction of the juvenile court, on the basis of certain sex offense adjudications, were required to register as sex offenders. Juveniles required to register for life, contrary to adults, were to be afforded a hearing twenty-five years after the completion of court supervision. At that hearing, the juvenile offender would be able to have registration terminated if he or she met certain criteria. The juvenile offender would have to show by clear and convincing evidence that he or she met the statutory criteria. The Supreme Court focused extensively on the difference between juveniles and adults and concluded that creating an irrebuttable presumption that the juveniles, based solely on their adjudication, demonstrated a high risk of recidivism, was unconstitutional.

judgments or decrees previously rendered." ***Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Scott***, 29 A.2d 328, 329-330 (Pa. 1942). Phrased differently, "even though the legislature possesses the power to promulgate the substantive law, judicial judgments and decrees entered pursuant to those laws may not be affected by subsequent legislative changes after those judgments and decrees have become final." ***Commonwealth v. Sutley***, 378 A.2d 780, 784 (Pa. 1977) (footnote omitted). Our Supreme Court, writing in 1862, has opined that "the power of the legislature to prescribe a general rule of law[,]" inconsistent with a prior judicial decree, is legitimate "when it operates on future cases and not retrospectively[.]" ***Commonwealth ex rel. Johnson v. Halloway***, 42 Pa. 446, 448 (1862).

For adult defendants who were not subject to lifetime registration based solely on their convictions at the time, the court was required to conduct an individualized assessment at a classification hearing and perform independent fact-finding to impose lifetime registration. This allowed the court to determine whether the person was so dangerous as to mandate that he register as a sex offender for life. To the extent that lifetime registration is automatically retroactively statutorily imposed, based on convictions or adjudications that did not result in such registration before, it could potentially, in certain instances, violate the separation of powers doctrine. This is because the court has already entered a judgment that the defendant

is not subject to lifetime registration. Here, a court determined Appellant was not required to register for life.

I repeat what the learned Professor Thomas Raeburn White so eloquently stated over a century ago: "Any law which relates to past events and alters the status of the parties with respect to them is unjust and unwise, and this has been universally recognized by the American people." Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 134 (1907). Retroactively requiring an individual to have to register as a sex offender for the remainder of his life, when he was initially subject to a ten-year registration period, deprives the individual of notice and an opportunity to be heard, and impairs his original plea bargain. For the aforementioned reasons, I respectfully register this dissent.