J-A32040-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD W. MCCOLLUM AND THERESA A. MCCOLLUM, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF MICHEAL S. MCCOLLUM, | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : : | |
| SARAH A. MOSER, | : : | |
| Appellant | : | No. 264 MDA 2017 |

Appeal from the Order Dated January 11, 2017
in the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): 4916-0362

BEFORE:   OTT, DUBOW, and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 05, 2018**

Sarah A. Moser (Moser) appeals from the order dated January 11, 2017, which dismissed her objections to letters of administration being granted to Donald W. McCollum and Theresa A. McCollum (the McCollums), on behalf of the Estate of Micheal[1] S. McCollum (the Estate). We affirm.

Moser and Micheal S. McCollum (Decedent) resided together from September 2001 until Decedent's death on August 6, 2016. Decedent died intestate. On August 26, 2016, the McCollums, natural parents of Decedent, were appointed as co-administrators of the Estate. On October 7, 2016, Moser filed an objection to the grant of letters of administration to the McCollums,

_____

[1] Theresa McCollum testified that her son's name "has a slightly unusual spelling" with "the A and E being reversed." N.T., 12/14/2016, at 19.

*Retired Senior Judge assigned to the Superior Court.

and requested to be appointed as co-administrator.  According to Moser, she was the common law spouse of Decedent. Objection of Moser, 10/7/2016, at ¶ 2.

The orphans' court held a hearing on this issue on December 14, 2016. On January 11, 2017, the orphans' court issued an order and opinion dismissing Moser's objections.  Moser filed a motion for reconsideration of the orphans' court decision, which was denied on February 3, 2017.  Moser timely filed a notice of appeal,[2] and both Moser and the orphans' court complied with Pa.R.A.P. 1925.

On appeal, Moser sets forth one issue for our consideration: "Did the orphan[s'] court abuse its discretion and/or commit an error of law in dismissing [] Moser's objection to grant [of] letters of administration to [the McCollums], on the basis that Moser had failed to prove she was the common law wife of [Decedent]?" Moser's Brief at 4 (unnecessary capitalization omitted).

We review this issue mindful of the following.  "The register's decision to issue letters is a judicial act.  A party contesting that act may appeal to the orphans' court. In turn, a party challenging a ruling of the orphans' court may, of course, appeal to this Court." *In re Estate of Tigue*, 926 A.2d 453, 456

_____

[2] Both Moser and the McCollums invoke this Court's jurisdiction pursuant to Pa.R.A.P. 341, which governs the appealability of final orders. **See** Moser's Brief at 1 (unnumbered); the McCollums' Brief at 1.  However, jurisdiction in this case is governed by Pa.R.A.P. 342(a)(5), which provides that an appeal may be taken as of right from an order of the orphans' court which determines "the status of fiduciaries … in an estate[.]"

(Pa. Super. 2007) (citations omitted). Where, as here, "the orphans' court has held an evidentiary hearing, we will then afford the court's findings the same weight as a jury verdict, and we will disturb the court's decree only if it is unsupported by the evidence or if it includes an error of law." *Id*. (citations omitted).

Instantly, Moser argues that the facts at the evidentiary hearing established that she was the common law spouse of Decedent. Accordingly, she contends that the orphans' court erred in dismissing her objections. *See* Moser's Brief at 18-24.

We first review the principles surrounding common law marriage in Pennsylvania. In *PNC Bank Corp. v. W.C.A.B. (Stamos)*, 831 A.2d 1269 (Pa. Cmwlth. 2003), the Commonwealth Court abolished common law marriage prospectively. Subsequently, "[t]he Pennsylvania General Assembly abolished the doctrine of common law marriage effective January 24, 2005, but also provided that '[n]othing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid.'" *In re Estate of Carter*, 159 A.3d 970, 972 n.1 (Pa. Super. 2017) (quoting 23 Pa.C.S. § 1103). Thus, in this case, all parties agree that Moser had to prove that she and Decedent established a common law marriage prior to January 1, 2005. In making this determination, an orphans' court considers the following.

> There are two kinds of marriage: (1) ceremonial; and (2) common law. A ceremonial marriage is a wedding or marriage

performed by a religious or civil authority with the usual or customary ceremony or formalities.

Because claims for the existence of a marriage in the absence of a certified ceremonial marriage present a fruitful source of perjury and fraud, Pennsylvania courts have long viewed such claims with hostility. Common law marriages are tolerated, but not encouraged.…

A common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by that. Regarding this requirement for an exchange of words in the present tense, this Court has noted:

> [I]t is too often forgotten that a common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, by words—not *in futuro* or *in postea*, but—*in praesenti*, uttered with a view and for the purpose of establishing the relationship of husband and wife.

*Estate of Manfredi*, [], 159 A.2d [697,] 700 [(Pa. 1960)] (citations omitted). The common law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time.

The burden to prove the marriage is on the party alleging a marriage, and we have described this as a heavy burden where there is an allegation of a common law marriage. When an attempt is made to establish a marriage without the usual formalities, the claim must be reviewed with great scrutiny.

Generally, words in the present tense are required to prove common law marriage. Because common law marriage cases arose most frequently because of claims for a putative surviving spouse's share of an estate, however, we developed a rebuttable presumption in favor of a common law marriage where there is an absence of testimony regarding the exchange of *verba in praesenti*. When applicable, the party claiming a common law marriage who proves: (1) constant cohabitation; and, (2) a reputation of marriage "which is not partial or divided but is broad

- 4 -

and general," raises the rebuttable presumption of marriage. **See Estate of Manfredi**, 159 A.2d at 700. Constant cohabitation, however, "even when conjoined with general reputation are [*sic*] not marriage, [] merely circumstances which give rise to a rebuttable presumption of marriage." **Id**.

**Staudenmayer v. Staudenmayer**, 714 A.2d 1016, 1020-21 (Pa. 1998) (some citations and internal quotation marks omitted).

Instantly, all parties agree that Moser satisfied her burden as to constant cohabitation – the couple lived together continuously from 2001 until Decedent's death. The dispute in this case focuses on whether the couple established a "reputation of marriage" prior to January 1, 2005.[3] **Estate of Manfredi**, 159 A.2d at 700. The orphans' court made the following findings of fact.

> The tax returns filed by [Decedent] with the Internal Revenue Service for calendar years 2001 through 2004 indicated under filing status that he was "single." On the other hand, in procuring an accident insurance policy on October 9, 2004, there were references therein that Moser was a "spouse." However, attached thereto was a union card undated that indicated Moser's relationship to [Decedent] as "significant other."

_____

[3] At the hearing, there was an abundance of testimony regarding events that occurred after January 1, 2005. In fact, Moser points to much of this testimony in support of her position. **See** Moser's Brief at 20-21. However, we agree with the orphans' court that Moser was required to produce evidence that prior to January 1, 2005, she and Decedent had established a common law marriage. **See In re Estate of Tito**, 150 A.3d 464, 469 (Pa. Super. 2016) (noting that "parties [who] entered into a common-law marriage prior to January 1, 2005 may still assert the validity of their union"); **Stackhouse v. Stackhouse**, 862 A.2d 102, 108 (Pa. Super. 2004) "([T]he date on which the evidence establishes the creation of a common law marriage, if it establishes one at all, is a critical determination upon which depends the rule of law to be applied.").

A spouse of Moser's brother testified that in 2004 the couple were always together, she viewed them as a married couple, but she was never shown any engagement or wedding rings by Moser until after [Decedent's] death. Likewise, a friend who knew the couple between 2001 and 2008 never saw Moser wear any rings until the funeral. There was an engagement ring and two wedding bands that were appraised on February 23, 2007, designated at that time the property of [Decedent] by the appraiser in a certificate. It is unknown whether they were purchased prior to January 1, 2005; however, they were not the property of Moser by this documentation on the date of expiration of common law marriage in Pennsylvania.

While friends, co-workers and relatives readily could state what was obvious to them, to wit, they were like a married couple in the manner of how they conducted their lives, this testimony fell short of establishing that they had truly contracted a common law marriage. The descriptions were as follows: "only two in each other's life;" "very close, virtually inseparable;" "more like a married couple;" "saw them as husband and wife;" "lived lives as husband and wife;" "pretty much married, shared a bedroom;" "like two peas in a pod" and so on. But these descriptions fit any two people who decide to live together in a romantic relationship. They know marriage is available as an option, a final, permanent, legal step, yet for whatever reason is not carried out. Perhaps the intention to marry someday was present (i.e. the purchase of rings), but one did not occur prior to January 1, 2005, or even before his untimely death in 2016. Otherwise, the tax status would have been changed on the federal tax returns, and Moser would have displayed the symbols of such marriage on her fingers years ago.

Orphans' Court Opinion, 1/11/2017, at 2-3.

Based on the foregoing, the orphans' court concluded "that Moser did not establish[] that [she and Decedent] had effected a common law marriage prior to January 1, 2005." *Id*. at 1-2. On appeal, Moser contends she did satisfy her burden. She argues that she presented 18 witnesses who "gave competent opinion testimony about [their] general reputation for being

- 6 -

married." Moser's Brief at 20. In addition, she points to "numerous exhibits, which corroborated the conclusion that they were husband and wife."[4] *Id*. at 21. Specifically, she points to the fact that she was the beneficiary on Decedent's "pension plan at Corning and on four life insurance policies." *Id*. In addition, she points to their joint checking account and the fact that the funeral bill was sent to her.

However, as the orphans' court pointed out, much of this testimony and evidence is related to events that occurred after January 1, 2005. Furthermore, we agree with the orphans' court that Moser failed to satisfy her burden that their reputation in the community was that of husband and wife. Importantly, despite Moser's presenting 18 witnesses to testify about her relationship with Decedent, not a single one testified that Decedent held her out as his wife. *See In re Dennis' Estate*, 147 A.2d 419, 419-20 (Pa. 1959) ("There is not the slightest evidence that decedent ever regarded her, held her out as, or referred to claimant as his wife, or that claimant regarded herself as his wife."). Rather, these witnesses testified to what was true –

_____

[4] While these exhibits were all introduced at the hearing and admitted into evidence, they are not included in the certified record. It was Moser's responsibility to ensure their inclusion in the certified record. Pa.R.A.P. 1921 (Note) ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials."). Because these exhibits are not in the certified record, we cannot consider them. *Id*. ("An appellate court may consider only the facts which have been duly certified in the record on appeal."). However, based on our conclusions *infra*, even if these exhibits were available for our review, the result would not be different.

Moser and Decedent were like husband and wife, but were not married. This simply does not satisfy Moser's heavy burden. Accordingly, we conclude that the evidence supports the decision of the orphans' court, and the orphans' court did not commit an error of law in concluding that Moser did not satisfy her burden of establishing a common law marriage.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/05/2018